**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Taplima Ansu, | No. CV-18-03851-PHX-DWL (DMF) |
| Plaintiff, | **ORDER** |
| v. | |
| CoreCivic, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Taplima Ansu's appeal (Doc. 57) of the Magistrate Judge's decision (Doc. 53) compelling him to provide a preliminary expert affidavit to Defendant Dr. Akhtar Hamidi ("Dr. Hamidi"). For the following reasons, the decision will be affirmed.

### RELEVANT BACKGROUND

This is a pro se civil rights case. Ansu is a detainee at the Central Arizona Florence Correctional Center ("CAFCC"). CoreCivic, a Tennessee corporation, operates CAFCC, which holds Immigration and Customs Enforcement ("ICE") detainees. (Doc. 6 at 4-5.)

On November 28, 2018, Ansu filed his first amended complaint ("FAC"), which lists Janelle Gonzales, Mario Miranda, Case Manager Broe, Dr. Kirby, Dr. Hamidi, and CoreCivic as defendants. (Doc. 6 at 2.) Among other things, the FAC alleges that on April 4, 2018, another inmate sexually assaulted Ansu during scheduled recreation time. (*Id.* ¶¶ 13-25.) The inmate "forced penetration with his finger" into Ansu's anus while Ansu "leaned over to have a drink of water." (*Id.*) ICE's follow-up investigation substantiated

Ansu's reported assault. (*Id.*)

The FAC alleges that, after the assault, Ansu requested mental health assistance and met with Dr. Kirby, a psychologist, who referred him to Dr. Hamidi, a psychiatrist. (*Id.* ¶¶ 44-46.) The FAC alleges that Dr. Hamidi interviewed Ansu through his cell door, forcing Ansu to yell and allowing other inmates to overhear their conversation. (*Id.* ¶¶ 47-50.) The FAC further alleges that despite Ansu's complaints about "sleeplessness," "disturbing unnatural sexual dreams," and "trust issues about having a cell mate," both Dr. Hamidi and Dr. Kirby failed to "address the sexual violation issue," refused to provide treatment, and failed to follow up about Ansu's anxiety and depression. (*Id.* ¶¶ 57-60, 118-23.)

In Count Four of the FAC, Ansu asserts a state-law claim against Dr. Kirby and Dr. Hamidi for "negligence/gross negligence." (*Id.* ¶¶ 118-23.)[1] The upshot of this claim is that, had Dr. Kirby and Dr. Hamidi properly treated Ansu's anxiety and depression stemming from the assault, "it is very likely that [Ansu's] suffering would not be as severe as it is today." (*Id.* ¶ 122.)

On August 2, 2019, Dr. Hamidi answered the FAC, denying the allegations in Count Four. (Doc. 34.)

On October 10, 2019, Dr. Hamidi filed a motion to compel a preliminary expert affidavit. (Doc. 44.)

On October 23, 2019, Ansu filed a response to that motion. (Doc. 45.)

On November 1, 2019, Dr. Hamidi filed a reply. (Doc. 48.)

On November 14, 2019, Magistrate Judge Fine issued an order compelling Ansu to provide a preliminary expert affidavit. (Doc. 53.)

On November 25, 2019, Ansu appealed that order. (Doc. 57.)

**STANDARD OF REVIEW**

Under Rule 72(a) of the Federal Rules of Civil Procedure, when a magistrate judge issues an order resolving a non-dispositive motion, "[a] party may serve and file objections to the order within 14 days after being served with a copy. . . . The district judge in the

---

[1] The Court has pendent jurisdiction over this claim because Counts One and Three assert federal causes of action.

| | |
|---|---|
| 1 | case must consider timely objections and modify or set aside any part of the order that is |
| 2 | clearly erroneous or contrary to law." *Id.* "The clearly erroneous standard applies to the |
| 3 | magistrate judge's factual findings . . . [while] the contrary to law standard applies to the |
| 4 | magistrate judge's legal conclusions, which are reviewed de novo." *Morgal v. Maricopa* |
| 5 | *Cty. Bd. of Sup'rs*, 284 F.R.D. 452, 458 (D. Ariz. 2012) (citation and internal quotation |
| 6 | marks omitted). "The clearly erroneous standard . . . is 'significantly deferential, requiring |
| 7 | a definite and firm conviction that a mistake has been committed.'" *Silva v. Olson*, 2013 |
| 8 | WL 870218, *2 (D. Ariz. 2013) (citation omitted). "[T]he contrary to law standard . . . |
| 9 | permits independent review of purely legal determinations by the magistrate judge." *Id*. |

**DISCUSSION**

Under Arizona law, a party asserting a claim against a "health care professional" must file a written statement at the outset of the case certifying "whether or not expert opinion testimony is necessary to prove the health care professional's standard of care or liability for the claim." A.R.S. § 12-2603(A). If the party agrees that expert testimony is necessary, it must "serve a preliminary expert opinion affidavit" that addresses the expert's qualifications, summarizes the factual basis for the claim, explains why the health care professional's conduct constituted "a violation of the applicable standard of care," and explains why the health care professional's conduct "caused or contributed to the damages or other relief sought by the claimant." *Id.* § 12-2603(B). Moreover, if the party disagrees that expert testimony is necessary, the opposing party may "dispute[] that certification in good faith" and request "an order requiring the claimant . . . to obtain and serve a preliminary expert opinion affidavit." *Id.* § 12-2603(D). In that circumstance, the court must determine whether a preliminary expert affidavit is required. *Id.* § 12-2603(E).

Here, Dr. Hamidi filed a motion under A.R.S. § 12-2603(D) to compel Ansu to provide a preliminary expert affidavit. In response, Ansu didn't dispute that Count Four involves a claim against a health care professional but argued that the affidavit requirement should be deemed inapplicable because Dr. Hamidi's negligence was obvious. Magistrate Judge Fine agreed with Dr. Hamidi, concluding that "[i]n medical malpractice cases, the

plaintiff must come forward with an initial expert affidavit that sets forth the acts, errors or omissions that the expert considers to be a violation of the applicable standard of care, resulting in liability." (Doc. 53 at 3.) On appeal, Ansu renews his argument that the affidavit requirement isn't absolute and contends an affidavit shouldn't be required here because his claims are "of such a nature that even a layperson would be able to identify them as a breach of the reasonable care." (Doc. 57 at 2.)

Ansu's argument is unavailing. "Arizona courts have long held that the standard of care normally must be established by expert medical testimony." *Seisinger v. Siebel*, 203 P.3d 483, 492 (Ariz. 2009). Similarly, "expert medical testimony is normally required to establish proximate cause." *Ryan v. San Francisco Peaks Trucking Co.*, 262 P.3d 863, 870 (Ariz. Ct. App. 2011). Nevertheless, these aren't absolute requirements—the standard of care need not be established by an expert where "malpractice is grossly apparent," *Rasor v. Nw. Hosp., LLC*, 403 P.3d 572, 575 (Ariz. 2017), and proximate causation need not be established by an expert where the "causal relationship is readily apparent to the trier of fact." *Ryan*, 262 P.3d at 870.

Ansu's claims don't fall within these exceptions. As an initial matter, although there is intuitive appeal to Ansu's argument that a psychiatrist who is interviewing a sexual assault victim shouldn't conduct the interview while in earshot of third parties (Doc. 6 ¶¶ 119-20), it can't be overlooked that the interview here took place in the unique context of a detention facility. There are strong reasons to suspect that the standard of care applicable to prison psychiatrists may be different than the standard of care applicable to psychiatrists practicing in other settings. Thus, it's not "grossly apparent" that Dr. Hamidi's interview technique fell below the standard of care applicable in the prison setting.

More important, although Count Four criticizes Dr. Hamidi's failure to conduct the initial interview in a private setting, the thrust of the claim is that Dr. Hamidi failed to provide any follow-up treatment after the initial interview, which in turn caused Ansu to "continue[] to suffer from mental health issues that could have been treated, causing him significant distress." (Doc. 6 ¶ 121.) This is a textbook example of a situation where expert

testimony is needed.  It may be that Dr. Hamidi's medical training caused him to believe that the mental distress Ansu was reportedly experiencing following the incident with the other inmate would resolve on its own, without the need for further medical intervention. Expert testimony is needed to properly evaluate Dr. Hamidi's conduct.  *See, e.g., Wade v. Castillo*, 658 F. Supp. 2d 906, 919 (W.D. Wisc. 2009) ("[I]n general, laypersons do not know how to identify and treat psychotic symptoms of prisoners."); *Watson v. Montana*, 2006 WL 1876891, *18 (D. Mont. 2006) (rejecting prisoner's malpractice claim against psychologist, because prisoner failed to proffer expert testimony concerning the standard of care, and noting that such claims "present[] complex questions of prison psychiatric health care which are beyond the knowledge of laypersons").  *See also Rae v. United States*, 2016 WL 4943378, *3 (D. Ariz. 2016) ("Undoubtedly, the complex and nuanced nature of psychiatric care that Plaintiff alleges her husband required and was not afforded is not the type of negligence that can be apparent to a layman.").

Finally, and in a related vein, Ansu's allegation in Count Four is that, although he was already suffering from some mental distress before he saw Dr. Hamidi, Dr. Hamidi's alleged negligence "very likely" exacerbated his "suffering" and caused it to be more severe than it otherwise would have been.  (Doc. 6 ¶ 122.)  This type of allegation raises complex questions of causation—how much of Ansu's suffering can be attributed to Dr. Hamidi's conduct and how much would have persisted even if Dr. Hamidi had provided Ansu's preferred course of medical care?  Arizona law generally requires expert testimony on causation in medical malpractice cases and this case doesn't fall within the exception for "readily apparent" causal relationships.  *Ryan*, 262 P.3d at 870

Accordingly, **IT IS ORDERED** that Ansu's appeal (Doc. 57) is **denied**.

Dated this 20th day of February, 2020.

Dominic W. Lanza
United States District Judge

- 5 -